Elizabeth Beringer May it please the court, Elizabeth Beringer on behalf of the United States. The court erred as a matter of law when it set aside the jury verdict for Count 2 in this case. It was either operating under a misunderstanding of the knowledge element or it was seeking an end run around the statutorily mandated sentence. In either case it abused its discretion and its decision should be vacated. If it's helpful to the court, I'd like to just go through the post-trial relevant timeline in this case. After the defendant filed his combined Rule 29, Rule 33 motion, in which he did not notably challenge the later sufficiency of the evidence, the district court held a hearing at which it stated and then the court granted the motion without reason. At a hearing a couple weeks later, the court stated that it was granting the new trial motion because it did not want to impose the statutorily mandated sentence. About four and a half months later, the court issued a written opinion in which it walked away from its earlier rationale and based its grant upon evidentiary reasons. A few days later at a status conference, however, the court returned to its original rationale for the granting of the motion for new trial and stated that it was basing it on the sentence and acknowledged even that it would be reversed by this court. Again, a month later at another status conference, the court reaffirmed its original rationale for the granting of the new trial, expressing that it was reluctant to issue the sentence that was required. Now, in either case, if the written order controls, it appears that the court did not understand the appropriate legal standard for knowledge, which does not require the government to prove knowledge of drug type. If the oral statements control an interest of justice under Rule 33 do not include a court's personal disagreement with the sentence required by the jury's verdict and the applicable statute in the absence of what Hoffman said is any procedural problems at trial or some sort of evidentiary deficiency. Counsel, what if you read the written order not to say that it's about drug type, but to say that it's not about specific knowledge that there's marijuana, that it's equivocal whether he actually knew there was marijuana? Why isn't that a legitimate way to read the order and why wouldn't that be subject to clearly erroneous standard and why would that not be clearly erroneous? Your Honor, the court's logical concern about whether his statement or thought, his self-serving thought or belief was knowledge. The court parsed that out and put it in isolation as if that was the only evidence of knowledge. That wasn't the only evidence of knowledge. If that was the only evidence of knowledge, perhaps this would be a much closer case. But this is not a close case. There was a tremendous amount of knowledge in this case about the defendant's knowledge that he possessed a controlled substance. In addition to his statement, there was the statement from Dominguez that the defendant wanted the drugs out of the house. There was evidence that he moved these bundles of marijuana and methamphetamine from these bins in his garage into three suitcases in a bag and then to take to the byway house. He concealed the drugs in the attic of a friend's house and lied to his friend about why he was hiding the drugs in his house and what was in the suitcases. And most tellingly, if you look at Exhibit 27 in this case, these bundles are just piled into these three suitcases and bags. They're all one pound. They're all very similar. There are slight differences in how they look, but they're all very similar size. And they're just piled in these. And the defendant had to go over to the byway house. He had to pick out 10 of those bundles. He happened to pick out of the 103 bundles, 10 bundles that happened to be the exact quantity that was requested by Rodriguez, picked them out, put them into another bag from the attic, carried down the bag and handed it to Rodriguez. I mean, to Dominguez. And then again, on the recording, Dominguez told the C.I. that she worked with her husband and that her husband trafficked marijuana. So in light of all of this evidence, the court's finding that there was some sort of Rule 33 situation, that the weight was not significant, not addressing that other evidence, especially in light of the context of the court's statement. But this isn't really why he's granting the motion for a new trial. He would have to find that it was clearly erroneous when he says he never opened the side, that he placed him in several suitcases and immediately moved him to the byway residence, away from his home and family, that he believed they contained something illegal. But if anything, marijuana, but this was insufficient to establish knowledge of marijuana. It's a whole series of factional determinations. We would have to find all of those to be clearly erroneous in the evidentiary. Is that correct? In order to if the court reads the order that way and discounts all of the statements that the court made about why it was really granting it, yes, it would be under clearly erroneous standards. But it's clearly erroneous here. He only addresses one fact of the knowledge, the defendant's statement, never opening the bags. Like how did he he was it was undisputed. He was the only one with access to the drugs in the attic. He was the one officers watched him into the house. Officers watched him deliver the drugs to Rodriguez. He admitted he did so. He had to go in and pull out from 103 bundles the rest of the bundles. I'm a little confused about the standard of review. And the jury was the fact finder and the jury found the defendant guilty, right? They're the fact finder. Then the judge has the option to order a new trial if he thinks that's appropriate under the standard. But since the jury found the facts, why do we review, you know, so a district judge can say, well, I vacate the verdict because it's against the great weight of evidence. But in doing so, is he actually making findings about what the facts were or more just saying the weight of the evidence was against this verdict, if that distinction makes sense? Well, the court is allowed to make credibility assessments in Rule 33, and he did so here. He credited testimony that in Dominguez's testimony that tended to exonerate the defendant. However, he can't completely, you know, just throw away the verdict and just personally disagree. That's not the whole reason that these bags were moved over to that house into the attic was because they're drugs and they didn't want the drugs in their own house. That was the testimony of Dominguez, that the defendant did not want the drugs in his house, so he moved it from bins into the suitcases and into the attic of his friend's house. Yes. Assuming arguendo that you were to prevail, and I'm not foreshadowing, what results, because there are the other parts that you haven't appealed. Yes, Your Honor, we're only appealing count two in this case, which is the substantive drug count. But because of he would be facing the 10-year minimum mandatory as if he reinstated the count for that. But he would have to have a whole new sentencing hearing and everything, and there's a 10-year mandatory minimum, right? Yes, he has never had a sentencing hearing. But he would have to have that and on the count two only, which is the 10-year mandatory minimum. Yes. But he might not get as much time as what was predicted. It was more than 292 months or something, wasn't it? Yes, so before the passage of the First Step Act, as a result of his prior drug trafficking conviction, he faced a recidivist enhancement that set his sentence at 20 years. After the passage of the First Step Act, because of the sentence that was imposed in his original case, that 851 enhancement's off the table. The government has no plans of lodging that again. So he would only face the 10-year minimum mandatory. Okay, thank you. So in response to the court's questions, Rule 33 does not allow a district court to usurp the jury because it disagrees with the outcome or sentence or it just thinks that it has a better read of the facts than the jury. It's supposed to be based on the weight of the evidence for pondering heavily against the verdict. And it gets to call a mulligan only when there's some sort of procedural problem with the trial or where the verdict is so strongly against the weight of the evidence. And that is not what we have in this case. Rule 33 is not unbounded. It's a rule that doesn't just allow the district court to throw out the verdict and set aside the jury's function anytime it disagrees. Here we had strong evidence of knowledge. We know the court, I'm sure this court has empathy that the court disagreed with the statutorily mandated sentence, but Rule 33 does not include those type of reasons in it. And if this court allows such a sentence to be set aside, what jury verdict is safe? A district court could simply set aside a jury's verdict any time it personally disagrees with it, notwithstanding how much evidence on that particular element. If there are no further questions, I would just reserve the rest. Can I just clarify again, the standard of review for us here is not whether it's against the great weight of the evidence. The standard of review in reviewing this particular motion, the motion grant of a motion for new trial is abusive discretion with de novo review of the law and clearly erroneous deference to the facts. Isn't that correct? And we look at the motion and we look at the evidence of trial in light of the district court's evidentiary findings. Yes, your honor. I think the best articulation of the circuit standard is in a case called law from 2004 cited in the government's brief. And after it identifies the articulated grounds of the district court, questions of law are renewed de novo for mixed questions, which the court's factual finding in this case is sort of a mixed question on the knowledge element. It reviews any conclusions drawn from the facts de novo. So any sort of legal conclusions drawn from the facts de novo. And then any sort of factual findings are clearly erroneous standard. Thank you. So I would just reserve the rest of my time for rebuttal. Thank you, Ms. Baird. Ms. Salcid. I'm sorry, I did not realize. May it please the court. What you ended with Judge Elrod is what I was going to start with, which is the standard. It's abusive discretion standard for granting a new trial. And I think in a case like this, it's very important to think about why the court of appeals defers to a trial court. The trial court has the ability to observe all of the evidence, has the ability to observe the demeanor of witnesses and to make credibility findings with respect to those witnesses. Doesn't the jury have that same ability? Yes, they do. Trial. Yes, they certainly do. They certainly do. And so to the standard of review, I don't think anyone's disputing it's abusive discretion, but the underlying trial court standard, unless there's a procedural error, like evidence was improperly admitted or where there was some kind of juror misconduct. The standard, the trial court's looking at is, was the jury's verdict against the great weight of evidence. So our question is, did the district court abuse its discretion in finding that the verdict was against the great weight of evidence, right? I mean, you have to, in looking at abusive discretion, you have to consider the underlying trial court standard. Isn't that right? That's correct. That's correct. And, and I mean, really in the, in the government's opening brief, they also, I mean, and in argument, they talk about him, the judge using the incorrect legal standard as well. And misunderstanding McFadden, misunderstanding the knowledge requirement. And with respect to that, I just have to say the judge's memorandum opinion, he sets out the correct legal standard. He identifies it. He sets it out correctly that McFadden says you either have knowledge of a drug or you have, or you have knowledge of the identity of that drug. The judge has never said or in a written order that the person has to have knowledge of the specific drug. It's a two-part thing with McFadden that, so I think it says specifically, for instance, if someone had heroin, it wouldn't be a defense to say, gee, I didn't know it was on a schedule. So it's a two-part thing. And the judge correctly identified that. And he never said that if Mr. Crittenden believed it was some other kind of drug, that's his defense. And I, and I sort of feel like that's a red herring out there. I think it's very clear the judge applied the correct standard. So you agree that marijuana is on the schedule and it's like, you know, there's all these movements to take it off, but it is currently on the schedule, right? Yes. Yes. I do agree your honor. And, and, and this is I think what it comes down to also is, and I have to say with due respect to the government, I, I don't think their summary of the facts is correct. I think they're taking liberty with some of the testimony. The judge did observe all of the testimony, although he did not make specific credibility findings. He certainly is entitled to do that. And one of the things the judge said is that even if Mr. Crittenden said, he believed it was marijuana, belief is different than knowledge. And, and I understand that sometimes you could say, I believe there's marijuana in that bag, and there would be sufficient facts that would lead you to believe that sort of like you even knew or should have known, but a belief in the absence of facts does not create knowledge. So one of the things the judge said in his findings, and I think this is perhaps the most important of his findings, he said in his memorandum of opinion, he said the evidence showed at most that the defendant believes the bags can be in something illegal. He says at most, and I think what the court is saying there is that maybe somebody could have believed it, but the great preponderance of the evidence wasn't there, but maybe somebody at most could have shown that. He goes on to say more specifically, if anything, the defendant believed it was marijuana. And those are two phrases the judge uses that the government consistently omits from their summary of the judge's findings that he found at most, he thought something illegal, if anything, marijuana. And of course, a judge can't set just because they disagree with it. But we have to remember a judge can grant a rule 29 motion at the close of the government's case. Judges always have that option to do that. They don't, and generally judges don't abuse that, but the government can't appeal a directed verdict at the close of the evidence. I think that one of the things, another reason we defer to courts is because they have experience with factual patterns. And I think the court can take note that this is a district judge that has been on the bench over 25 years and probably tried thousands of drug cases. Some of the facts specifically that the judge noted were facts about how that Mr. Crittenden did not open the bags, did not have an opportunity to see inside. I understand the government views the evidence differently, but those are findings the court made from observing all of the witnesses, observing the demeanor of the witnesses. And those are the conclusions the court drew from sometimes conflicting evidence, but a court can do that. And it is not clearly erroneous if they make their determination. I do want to address, I'm sorry. Do you agree? Hi. Do you agree that it would be inappropriate for the district court to have made this decision based upon concerns about the sentence being too long with the absolutely, absolutely. Your honor. I, I, and, and I was just going to the court. Yeah. You're going to address those now because the court did make some statements and in fact said, I'm probably going to get reversed because it made some, a whole bunch of statements about the Senate. I mean, this, this decision to, to grant a new trial, which is different than what's in this very detailed memorandum that the court issued. Sure. With respect to his, his comments, his oral statements, the judge's oral statements, a couple of things. One is his written order is thorough. His written order. I don't believe it's confusing. I believe that the cases generally say that where a court's order is clear, you don't know, need to go beyond that to look at sort of like a statute. You don't go to legislative history. If the statute is clear, I think the same thing is true of an order. Now there certainly are cases that say sometimes judges say things that do not completely reflect their measured judgment. Uh, that certainly could be the case here, but, but let me say specifically a couple of things about this. One is that the court had an opportunity, and this is why Ms. Beringer's review of the procedure at the beginning is important. That, that theory was tested because the first step act came into play after the granting of the new trial. So when Mr. Crittenden was originally facing sentencing, he had a prior conviction that was eligible to enhance the 10-year minimum mandatory up to 20 years. So the judge would have had to give them a mandatory 20. Later when, when this court remanded the case back to the district court to reconsider the motion of a new trial, the first step act had passed and that prior conviction, which was a probationary sentence, no longer qualified as an enhancing conviction. So it, the, the minimum mandatory did not kick up to 20. The minimum mandatory was down here at 10 years. So I would say the government had a chance to test that theory to see whether that was what Judge Briones was concerned about, that he disagreed with the enhancement. That theory was tested because the judge had an opportunity to reconsider once the minimum mandatory was cut in half. And, and he entered, excuse me, he entered a very short order relying on his previous order. The second thing about that is that his comments, as I said, I don't, I don't think that they can contradict what's in his order, but if you were going to his oral comments, there are a couple of times the judge voiced concerns about the weight of the evidence during the trial. And I would say when he talked, when a motion for judgment was raised at the close of all of the evidence, and that's at page 607 of the record, he had questions about Mr. Crittenden's knowledge and intent. And he said, the judge said to defense counsel, argue to the jury. And then the judge said, and maybe I'll take it up after, which I understand that to mean if the jury doesn't do what he thinks, if the jury does not acquit, he will reconsider a judgment of acquittal. Again, during the charge conference, the following day at page 621 of the record, the judge says, well, let me tell you something, Mr. Morales, that's Mr. Crittenden's defense I will entertain a motion for acquittal. Timely filed in writing with the government's opportunity to respond. So this was not a shoot from the hip. I get the pre-sentence report and I'm troubled and I'm going to set this aside. He was concerned about the weight of the evidence during the trial as the evidence was coming out. I do think that some of the judge's findings, well, I guess I'd like to go back to just why we defer to a court. The judge did not make specific credibility findings. He did not say I credit some of Ms. Dominguez's testimony, but not other parts of her testimony. One of the things the government says in its reply brief that Mr. Crittenden was interviewed. He says, this is an unrecorded interview, but the agents testified that Mr. Crittenden said, I believe the bags had marijuana. Judge Briones has the opportunity to use his judgment, his experience to understand what that meant in the context of the whole scenario. And the government says in its reply brief that that statement alone, actually the government doesn't quote the testimony that Mr. Crittenden believed. I think it's that he thought there was marijuana in the bags. That's the way the government puts it in the reply brief. But Judge Briones has the wisdom, I would say, and the experience to understand what a comment in an interview to arresting agents or not arrest, he was not arrested at that point. What a comment to agents, the weight that should be accorded to that comment. Government says that that statement in and of itself is enough to support a verdict. And I think that Judge Briones is in a better position to say that, no, that is the strongest piece of evidence the government had. And the great weight and preponderance of the evidence goes against a conviction in this case. He specifically says belief does not amount to that in my comments. But we know that you could have a standard of you knew or should have known. But when there, which by the way, that instruction, the deliberative instruction was not given in this case. But we know that sometimes that is a standard use, should have known. When it's should have known, there are facts that lead to that determination that the person should have to the side. And what do you do with the evidence that, you know, he moved it over to that house to begin with and on the testimony that they didn't want the drugs in the house. And then he was able to go retrieve it, got the right bag. I mean, the fact that it was meth and marijuana over there, but yet he got the right bag for the deal she was doing. How do you deal with those facts that seem to support a knowledge finding? Well, what I would say, there is not evidence that he selected the bundles and put them in the bag there. That is not supported by the record, your honor. What what is about who got who got the bags and selected them? I think the wife says he might have the wife did not. Dominguez is his wife. She thinks that he might have, but she doesn't know. She says that she does not know. OK, I guess I read the record wrong. And I thought that was at a minimum, a reasonable inference to be drawn that he went and retrieved it. Since he put it there, he'd know where where they were. Well, no, no. And maybe I'm misunderstanding your question. He did grab a certain bag, which was a suitcase that he had put in the attic, I guess, of his friend's house. And wasn't it the bag that did, in fact, have the deal that was being talked about, the drugs that were being talked about in the in the buy? Yes. Yes. So my point is he got the right bag. I guess you're saying it was accidental. He just happened to grab one and it just turned out to be the right bag. I mean, I mean, there's other scenarios I could think of that, for instance, Miss Dominguez, the codefendant, put the things in the bag and just didn't admit to it. She might have put the things in the bags and said, grab the I don't remember the colors, but just, you know, grab the red suitcase for me. Bring me the red suitcase, please. I thought he put it in a different container. No, I mean, I know that the government says that that is not supported by the record. I'm sorry, Your Honor. There's no evidence of that? No, no, there's not. And honestly, if there was evidence that he had pulled bundles out of one container and put them in another container, I mean, the judge wouldn't have granted this motion that that wasn't the evidence. What? And I would like to say that when the person brought, I think the agent said it was a black man that brought the bag out of the house. They could not identify who that black man was. But I know Miss Dominguez said it was her husband. And I believe Mr. Crittenden also said, yes, I brought her a bag. She asked me to bring this bag. I brought her this bag. But this business of putting bundles in something and selecting them or that he must have seen it because there were the actual bundles, that is not supported by the records, Your Honor. What we have is... But Chris, isn't there testimony that he, Crittenden is the one who wanted it out of their house? He was like having the drugs in the house and he instigated the move to the friend's house? There is evidence, I believe, that his wife testified. And I'm sorry, I have a note on that. His wife said he wanted the tub out of the house and that he probably put the contents of the tub into the suitcase. Right. I was going to say, I think, yes, I was going to say that's what I was referring to a minute ago. And there was evidence that she said that he probably did it. She was claiming she didn't know how it happened. I think what I would say is that this is where the judge gets that he thought there was something illegal. I don't think that there's evidence that he thought it was drugs at that point. I think it was something illegal. And the judge's finding was that at most he believed it was something illegal and at most potentially marijuana. I think, honestly, the judge's findings were very specific. It is kind of a complicated record. There's a testifying co-defendant who is probably not the most credible witness. If not drugs, and I know we can come up with some kind of what's highly plausible to think is there without drugs. If you agree he thought something was illegal or the district court agrees. If not drugs, I mean, what, guns, laundered money, what else? Money is the first thing that comes to my mind. But money is not inherently illegal unless it's connected with the drug trade it is, which sort of goes back to whether he knew there might be drugs. Well, but then that would go back to a conspiracy charge, which isn't being even raised on this appeal, of course. But you're right. That would potentially involve him in a conspiracy charge. But if it was guns, they wouldn't be able to have that in their house, would they? Because of his prior. That's correct. Because he is a convicted felon at that point. Yes. Yes. So, I mean, there are other illegal things that there could be, you know, drugs that aren't on a schedule, things, you know, products, other illegal products that you could have. I think at the end of the day, what we have is a judge with a lot of experience who's over a lot of cases. And I know if a judge had said on the record, I'm not doing this because I disagree with this guideline. And judges certainly do that sometimes. They say, I don't like this law. I don't like this guideline. But that's not what this judge did. He said, I can't sentence this man to this much time. And maybe what he meant is that I need to correct this injustice. Maybe what he meant is that this is making me look at this more carefully. I'm going to go back and look at all the evidence and get the transcript of it and look at everything. And he made very detailed, considered findings, factual findings. And if the court were to reverse, I mean, at the end of the day, what the judge said is he said, this would be a miscarriage of justice. This judge with this much experience handling this many drug cases says it would be a miscarriage of justice if I do not set this verdict aside. And I think that judgment deserves deference. And I think the court cannot substitute its judgment or its interpretation of the facts for Judge Briones's. And I have no other questions. I think I'm about out of time. Thank you, Miss. Thank you, Your Honor. First, I would just like to address the posture that this comes in. This is not a typical abuse of discretion standard. As this court recognized Judge Clement in the Tarango dissent that when a court sets aside a jury's verdict, there's sort of this tension between our deference to the verdict and our deference to the judge. So we have to engage in a more rigorous review when we cast aside a jury's verdict. This is not just an evidentiary decision discretion. It's a very special case where a court gets to really throw aside what the jury's function and role was to be the fact finder. And so this court should engage in a rigorous review of its factual findings, especially when it's written decision focuses on one statement of defendant, ignores all other evidence and doesn't address it. And in the context of the court statements at the hearing, that this is really not why it is granting a new trial, both before and after it's written order, that there's just something else going on here. As far as the experience of the judge, yes, Judge Briones is very experienced, which is why he knows and he says on the record that this court will reverse him because he's so experienced, he knows this is an improper use of Rule 33. And I'd like to clear up some of the factual determinations because apparently there's disputes. The only evidence that we have about how can you tell, can you talk to the Turango majority opinion, you cited the dissent to us, that the majority says there is no abuse of discretion and that you can't entirely usurp the jury's function, but you can weigh the evidence and assess the credibility of the witnesses. Yes, Your Honor. Well, first of all, Turango is a very different case. It's not, the court didn't reverse or grant a new trial based on the weight of the evidence. It granted it based on that sort of other category of some sort of procedural problem that was happening in a trial that caused prejudice to the defendant, which was a joint trial. Although I did note, as one of the factors in that prejudice is that there was very little evidence of the defendant's it's more a model of that other category of cases and not really the evidentiary type cases, which would be more right. Or another one is Hoffman mentioned it, but didn't really evaluate it. As far as, I'm sorry, as far as Turango, again, Turango has great language that totally applies in this case about that a court must not entirely usurp the jury's function or simply set aside a court verdict because it runs counter to the result the district court believed was more appropriate. And that is precisely what happened in this case. That's the outer limits of rule 33. Rule 33 may have extremely wide discretion and leeway, but once you entirely use their jury's function or do it for grounds that are not committed under rule 33, or runs just because you believe or the court believes there's another outcome that would be better, that's outside rule 33. So Turango actually supports the government's appeal in this case. Going to the record, I would just like to highlight some of, well, I lost my little her husband wanted the drugs out of the house. That alone establishes knowledge. He wants the drugs out of the house, recognizes and has an awareness that their drugs is on page 561. Once he moved the drugs, he was the only person with access to the drugs. Of course, that's corroborated by the fact that agents followed him to the house. He went into the house, retrieved his drugs by the agents watching, the agents watching Dominguez's testimony. And then the defendant's admission to the officers after his arrest. So all of those show that the defendant went over to the house to retrieve the drugs. That's on 561 and 562. A lot of times in the record, the drugs didn't come in these sort of suitcases and bags that is highlighted in exhibit 27. I'm not entirely clear that the exhibits got transferred in to this court, but after this oral argument, I will certainly make sure that they are added to the record or make a motion to update the record and include those exhibits. But they were, they came in some sort of plastic bins. And so Dominguez's testimony is that those were somehow transferred to those bins and she didn't do it. She doesn't know, probably it was the defendant. The jury could have certainly drew an inference of him moving those from these bins to suitcases. We had that on page 595. She also had a statement that she told state officers that he wanted to get the drugs out of the house. If we go to 596, he said he did not want the tub in there, that the things had to move into the suitcases. And again, on exhibit 27, you're going to see that the meth and the marijuana is commingled. There's not separately divided. You just see the lump of drugs. Something that is not before us in the appellate record right now. It's just in a trial exhibit. I'm not sure if those got. You can bring it up. I'm just, it's part of the testimony at trial, but there were photographic exhibits that were admitted that I would like to. Exhibits are part of the record, right? I mean, the trial exhibits are part of the record. Are they part of the appellate record? I would just ask that you vacate to the judgment. Thank you. Case will be submitted in a cylinder. You're a court appointment. You reported your court. And the court thanks you for your service.